**PCTV GOLD, INC., Appellee,**

v.

**SPEEDNET, LLC, Appellant.**

**No. 07–2189.**

United States Court of Appeals, Eighth Circuit.

Submitted: Sept. 24, 2007.

Filed: Nov. 29, 2007.

**1140**

Bartholomew L. McLeay, argued, Paul R. Gwilt, Omaha, NE, Bradley J. Baumgart, M. Courtney Koger, on the brief, Kansas City, MO, for Appellant.

Thomas Walsh, argued, St. Louis, MO, Craig S. O'Dear, James D. Lawrence, on the brief, Kansas City, Mo, for Appellee.

Before BYE, BENTON and SHEPHERD, Circuit Judges.

BYE, Circuit Judge.

SpeedNet, LLC, appeals an order of the district court[1] entered in favor of PCTV Gold, Inc. (Sprint), a subsidiary of Sprint–Nextel Corporation. The order preliminarily enjoins SpeedNet from:

> (1) closing upon, transferring assets in furtherance of, or completing any portion of the transaction envisioned in the Purchase Agreement between SpeedNet and Clearwire[2];
>
> (2) executing or entering in to the draft Joint Venture Agreement between SpeedNet and Clearwire; or
>
> (3) selling or transferring any assets to any third party entity other than transactions in the ordinary course of business.

SpeedNet appeals from portions of paragraphs (2) and (3) of the district court's order relating to the joint venture with Clearwire. We affirm the district court.

## I. BACKGROUND

Sprint holds an exclusive license from the Federal Communications Commission (FCC) to construct and operate Broadband Radio Service (BRS) in the Saginaw, Michigan, area. SpeedNet, a provider of fixed and portable high-speed wireless internet services, entered into a contract to lease "licensed spectrum"—radio frequencies used for the transmission of data, sound and video—from Sprint to enable it to offer reliable wireless service. On August 30, 2005, Sprint and SpeedNet entered into

---

**1.** The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

**2.** The term "Clearwire" refers to Clearwire Spectrum Holdings II, LLC.

a Market Operation Agreement (MOA), wherein Sprint leased licensed spectrum to SpeedNet for a period of five years, with three five-year options to renew exercisable by SpeedNet.[3]

Section 15.5(b) of the MOA contains the contractual provision at issue, which the parties have identified as a "Right of First Offer" (ROFO). While the parties disagree as to the proper interpretation and application of the section, they do agree SpeedNet granted Sprint a ROFO, which SpeedNet admits at least "under certain limited circumstances" required SpeedNet to offer to sell its assets to Sprint before selling to any other entity.

Subsequent to entering into the MOA with Sprint, and unbeknownst to Sprint, SpeedNet spent several months negotiating a Purchase Agreement with Clearwire, one of Sprint's main competitors. On or about August 8, 2006, SpeedNet and Clearwire executed a Purchase Agreement, under which they agreed to either: (1) merge by exchanging substantially all of SpeedNet's assets for Clearwire stock, warrants and limited cash or (2) execute a joint venture agreement (SpeedNet JV) previously agreed upon for the purpose of utilizing the twelve channels of spectrum the parties jointly subleased from Sprint. The two companies anticipated the transaction would close on or before February 8, 2007. They did not inform Sprint of the proposed merger until on or about December 11, 2006.

On March 1, 2007, Sprint filed a breach of contract action against SpeedNet, in which it sought injunctive relief and specific performance to enforce SpeedNet's obligation to first offer the sale of its assets to Sprint. On April 16, 2007, Sprint amended its complaint and moved for a preliminary injunction to prohibit SpeedNet from transferring its assets or otherwise altering the structure of its company before Sprint's rights under the ROFO provision of the MOA had been adjudicated, i.e., to specifically prevent SpeedNet from entering into a merger or a joint venture with Clearwire. SpeedNet advised Sprint prior to the hearing about SpeedNet seeking only to pursue the SpeedNet JV and no longer intending to merge with Clearwire.

On April 16, 2007, the district court held a hearing on the motion. The court stated Sprint appears likely to succeed on the merits of its claims and found Sprint is subject to irreparable injury if SpeedNet is permitted to merge or enter into a joint venture with Clearwire. The court also found monetary relief would not provide adequate or complete relief to Sprint, and the balance of equities warranted the issuance of a preliminary injunction. The court entered a preliminary injunction order at the conclusion of the hearing, followed by a written order entered on April 24, 2007. This appeal followed.

## II. DISCUSSION

### A. Failure to Appeal From Paragraph One

■ At the outset, Sprint suggested this court is unable to allow SpeedNet any meaningful relief as it did not appeal from the first paragraph of the district court's order. The first paragraph enjoins SpeedNet from carrying out "any portion of the transaction envisioned by the Purchase Agreement." Sprint claims, since the SpeedNet JV is a transaction envisioned by the Purchase Agreement as an alternative to the proposed merger, the first paragraph enjoins SpeedNet from consummating the SpeedNet JV. Sprint argues because SpeedNet has expressly declined to appeal this alternate ground for the district court's ruling, the injunction below

**3.** Section 16.13 of the MOA provides that Kansas law governs the agreement.

must be affirmed because an alternatively dispositive provision stands unchallenged. We disagree.

■ The Eighth Circuit construes notices of appeal liberally as long as the intent to appeal the judgment in question is apparent and there is no prejudice to the adverse party. *Herts v. Smith,* 345 F.3d 581, 584–85 (8th Cir.2003); *Parkhill v. Minn. Mut. Life Ins. Co.,* 286 F.3d 1051, 1058 (8th Cir.2002); *Berdella v. Delo,* 972 F.2d 204, 207 (8th Cir.1992). SpeedNet's intent in appealing only paragraphs two and three was to challenge the injunction as it applied to the SpeedNet JV and *not* to challenge the injunction as it applied to the contemplated merger. SpeedNet stated in its Notice of Appeal: "Speednet appeals from the joint-venture-prohibition in subparagraph 2, and the prohibition in subparagraph 3 to the extent it prohibits the formation and operation of the joint venture, but does not appeal from any other portion of that Order." In the Statement of Facts section of its Appellant Brief, SpeedNet stated it "appeals only that part of the Order enjoining SpeedNet from consummating the SpeedNet Joint Venture" and notes it "also appeals that part of the Order prohibiting SpeedNet from transferring assets outside the ordinary course of business, but only to the extent it impedes SpeedNet's ability to consummate the SpeedNet Joint Venture." SpeedNet placed Sprint on notice as to its challenge of the injunction with respect to the SpeedNet JV, and Sprint did prepare a responsive argument; Sprint is not prejudiced.

Sprint relies on *Parkhill* for the notion an appellant is precluded from challenging an order he or she failed to identify in the notice. In *Parkhill,* however, this Court specifically stated "[w]hen determining whether an appeal from a particular district court action is properly taken, we construe the notice of appeal liberally and permit review where the intent of the appeal is obvious and the adverse party incurs no prejudice." *Id.* (citing *Moore v. Robertson Fire Prot. Dist.,* 249 F.3d 786, 788 (8th Cir.2001)). This Court found the intent to appeal a *separate* order was not obvious in the *Parkhill* case. In the instant case, however, SpeedNet has appealed the district court's order granting a preliminary injunction and specifically identified the provisions it appeals as those which pertain to the SpeedNet JV and *not* that which it believes pertains to the merger. For this reason, we consider the merits of SpeedNet's appeal.

### B. Standard of Review

■ We review the district court's grant of a preliminary injunction for abuse of discretion, giving deference to the discretion of the district court. *Doe v. South Iron R–1 School Dist.,* 498 F.3d 878, 880 (8th Cir.2007); *Emerson Elec. Co. v. Rogers,* 418 F.3d 841, 844 (8th Cir.2005). Abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions. *In re SDDS, Inc.,* 97 F.3d 1030, 1040 (8th Cir.1996). We will not disturb a district court's discretionary decision if such decision remains within the range of choice available to the district court, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment. *Walser v. Toyota Motor Sales, U.S.A., Inc.,* 43 F.3d 396, 401 (8th Cir.1994). In every case, an appellate court must remain mindful as to the district courts being closer to the facts and the parties, and not everything which may be important in a lawsuit necessarily comes through in exactly that way on the printed page. *Kern v. TXO Prod. Corp.,* 738 F.2d 968, 970 (8th Cir.1984).

## C. Preliminary Injunction

■ "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). We hold the district court did not abuse its discretion in granting the preliminary injunction, and properly applied the *Dataphase* factors. The court concluded: (1) Sprint is subject to irreparable injury should SpeedNet be permitted to merge or enter into a joint venture with Clearwire because monetary relief will not provide adequate or complete relief to it; (2) Sprint is likely to succeed on the merits as to its claim of SpeedNet breaching the ROFO provision of its MOA agreement with Sprint and must first tender an offer to sell to Sprint before all others; (3) the balance of equities warrants the issuance of a preliminary injunction; and (4) the granting of the preliminary injunction promotes the public interest under Kansas law by protecting the freedom to contract through enforcement of contractual rights and obligations.

### 1. Irreparable Injury

■ The SpeedNet JV will alter the structure of SpeedNet before Sprint has the opportunity to purchase it. SpeedNet argues Sprint can be compensated monetarily for any harm it incurs as a result of the transaction. SpeedNet points to Article Eleven of the MOA, which contemplates a sale of substantially all assets to a competitor such as Clearwire and provides for monetary compensation in such an event. SpeedNet's argument is misplaced. Article Eleven compensates Sprint when Sprint *declines* to purchase SpeedNet and SpeedNet sells instead to one of Sprint's competitors; it does not provide compensation for a breach of the ROFO. In this case, Sprint is suing to enforce its option to purchase SpeedNet. If SpeedNet is allowed to enter into the SpeedNet JV transaction, it will alter the structure of the company Sprint contends it is entitled to purchase. If the district court should later find Sprint is entitled to specific performance, it will be difficult if not impossible to undo the transfer of assets to Clearwire.

Furthermore, spectrum has unique characteristics that make its loss one which cannot be fully compensated by an award of money damages. The parties specifically agreed in Section 13.2 of the MOA that because spectrum rights are "of a special, unique, unusual and extraordinary character," the non-defaulting party is entitled to obtain injunctive and other equitable relief. The district court did not err in finding Sprint will be irreparably harmed if SpeedNet is allowed to execute the SpeedNet JV before Sprint's claims are adjudicated.

### 2. Likelihood of Prevailing On the Merits

■ In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991). While "an injunction cannot issue if there is no chance on the merits," *Mid–America Real Estate Co. v. Iowa Realty* Co., 406 F.3d 969, 972 (8th Cir.2005), the Eighth Circuit has rejected a requirement as to a "party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." *Dataphase*, 640 F.2d at 113. SpeedNet argues Sprint will not prevail on its claim because SpeedNet did not breach

the MOA and Sprint is equitably estopped from preventing the SpeedNet JV.

### a. Breach of Contract

■ To prevail on a breach of contract case, under Kansas law, a plaintiff must prove:

(1) The existence of a contract between the parties;

(2) Sufficient consideration to support the contract;

(3) The plaintiff's performance or willingness to perform in compliance with the contract;

(4) The defendant's breach of the contract; and

(5) Damages to plaintiff caused by the breach.

*City of Andover v. Southwestern Bell Tel., L.P.,* 37 Kan.App.2d 358, 153 P.3d 561, 565 (2007). Whether or not SpeedNet breached the MOA depends on the proper interpretation of Section 15.5(b), the ROFO provision.

SpeedNet contends it did not breach the ROFO provision because such provision didn't prohibit it from speaking with a third party about a potential sale. SpeedNet likewise contends the ROFO provision does not apply in this particular circumstance because Sprint is incapable of

matching Clearwire's "unique" offer of privately held stock and warrants.[4] Sprint contends the ROFO provision requires SpeedNet to inform Sprint when it *first considers* selling its assets and to provide Sprint with written notice of the sale terms SpeedNet would find acceptable. Sprint contends SpeedNet is absolutely prohibited from signing a purchase agreement with a third party prior to offering the sale to Sprint.

This Court need not decide which interpretation of the ROFO is the correct one. It need only review the district court's assessment of Sprint's likelihood to prevail on the merits. The district court considered each party's arguments carefully and did not err in concluding Sprint has demonstrated a reasonable likelihood of success on the merits of its claim.

### b. Estoppel

■ SpeedNet argues Sprint is equitably estopped from preventing the SpeedNet JV because Sprint encouraged, promoted and benefited from it.[5] A party requesting estoppel must show the other party engaged in affirmative conduct designed to mislead it. *Redman v. U.S. West Bus. Res., Inc.,* 153 F.3d 691, 695 (8th Cir.1998). Estoppel is not favored

---

**4.** SpeedNet also argues the ROFO is an unenforceable agreement to agree and a restraint of trade. We decline to consider these arguments raised for the first time on appeal. *See Hartman v. Workman,* 476 F.3d 633, 635 (8th Cir.2007).

**5.** Sprint urges us not to consider SpeedNet's estoppel argument because the argument was not raised in the district court. Ordinarily, we will not consider an argument raised for the first time on appeal. *Hartman,* 476 F.3d at 635. However, this court has addressed arguments where the issue is encompassed in a party's more general argument and no new evidence is presented on appeal. *See, e.g., Sexton v. Martin,* 210 F.3d 905, 914 n. 8 (8th Cir.2000); *Stockmen's Livestock Market, Inc.*

*v. Norwest Bank of Sioux City, N.A.,* 135 F.3d 1236, 1243 n. 4 (8th Cir.1998). Upon review of the record, we conclude SpeedNet alleged the facts on which its estoppel argument is based—that Sprint was not only aware SpeedNet and Clearwire intended to enter into a joint venture, it consented to, encouraged and benefited from such plan by entering into a Joint Bidding Agreement and a Sublease with SpeedNet and Clearwire—both in its opposition to Sprint's motion for a temporary restraining order and in the preliminary injunction hearing before the district court. Under these circumstances, we will consider SpeedNet's argument that Sprint should be equitably estopped from preventing the SpeedNet JV.

and should be used only in exceptional circumstances. *Id.* at 696. Under Kansas law,

> [a] party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.... Estoppel will not be held to exist where facts are ambiguous or subject to more than one construction.

*Rockers v. Kans. Tpk. Auth.*, 268 Kan. 110, 991 P.2d 889, 894 (1999)(quotation and citations omitted).

SpeedNet claims Sprint engaged in affirmative conduct which misled SpeedNet into thinking Sprint supported the Speed-Net JV and it would now be prejudiced if prevented from consummating the deal. In the absence of SpeedNet's alleged breach of the ROFO provision, SpeedNet might be correct that Sprint would be estopped from attempting to prevent the SpeedNet JV. SpeedNet's estoppel argument, however, cannot be separated from the context of this case. Sprint is suing to enforce its rights under the ROFO provision of the MOA, and the district court's order was intended to protect those rights. Under these facts, Sprint cannot be estopped from enforcing the ROFO provision because Sprint never engaged in conduct designed to mislead SpeedNet into thinking it would not enforce the provision. To the extent the district court considered whether Sprint was estopped from preventing the SpeedNet JV when it considered Sprint's likelihood of prevailing on the merits, it did not err in concluding Sprint was not estopped.

### 3. The Balance of Harms

 At the preliminary injunction hearing, the district court carefully weighed the harm SpeedNet alleged would befall it if it were enjoined from executing the SpeedNet JV against the harm Sprint alleged would come to it if SpeedNet were not enjoined. SpeedNet argued it would be denied a business opportunity and blocked from developing the Detroit market in partnership with Clearwire. Sprint argued the preliminary injunction would only delay SpeedNet's ability to transfer its assets, whereas without the injunction Sprint will forever lose its rights to purchase SpeedNet in its current state. The district court did not abuse its discretion when it concluded the balance of harms weigh in Sprint's favor.

### 4. Public Interest

 The hearing transcript indicates the district court carefully considered SpeedNet's argument about a preliminary injunction giving Sprint a monopoly over the spectrum in the Detroit market. The transcript suggests the district court was persuaded by Sprint's assurances its alleged monopoly would not harm the public interest and by Sprint's statements as to "nobody is up and running in Detroit,"[6] thus SpeedNet is not at risk of its business in Detroit being "destroyed" or "evaporat[ing]." (April 16, 2007, Hearing Transcript, 46–47). The district court also considered the public's interest in protecting contractual rights. It did not abuse its discretion by concluding its grant of a preliminary injunction promoted the public interest by protecting freedom to contract through enforcement of contractual rights and obligations.

---

**6.** Sprint stated no one is utilizing the twelve channels Clearwire and SpeedNet propose to take over in a joint venture; Sprint is not utilizing the eight channels it retained for itself. (April 16, 2007, Hearing Transcript, 46–47).

## III. CONCLUSION

The district court properly considered the *Dataphase* factors and did not abuse its discretion in granting Sprint a preliminary injunction. Sprint is entitled to preservation of the status quo pending a decision on the merits. We affirm the order of the district court.